14934

SCOVILL *ET AL.* v. SCOVILL *ET AL.*

(2 Cases)

(4 S. E. (2d), 286)

December, 1938.

324

*Messrs. Adam H. Moss, James A. Moss* and *Sims & Sims,* for appellants,

*Messrs. Lide & Felder* and *Louis Rosen,* for respondents, Anna Scovill, executrix and W. C. Wannamaker and Scovill Wannamaker as executors,

*Messrs. Zeigler & Brailsford,* for T. E. Marchant individually and as Receiver,

*Mr. Julian S. Wolfe,* for respondent, T. E. Marchant individually and as Receiver and C. H. Dixon as successor to T. E. Marchant as Receiver,

August 9, 1939.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

In this case the beneficiaries by way of remainder under a trust created by the will of the late Warren N. Scovill are attacking the validity of a substitution of trustees made in 1924, and they seek to open up the accounting made by the original trustees in that cause.

Under the will in question certain trusts were created under the terms of which Edward N. Scovill and Emily O. Wannamaker were appointed as trustees to administer the trust property for the use and support of the testator's son, Sheldon Scovill, and for the maintenance and education of his children during the life of Sheldon Scovill and thereafter for the benefit of the widow of said life tenant and of his children until his youngest child attains the age of twenty-one years. There are other provisions in the trust not material here. As far as the record discloses, the will contained no provision for the appointment of substituted trustees.

Under date of July 16, 1924, an action was commenced in the Court of Common Pleas for Orangeburg County for the purpose of substituting the Orangeburg National Bank as trustee in the place of Edward N. Scovill and Emily O. Wannamaker and to take an accounting of the original trustees and discharge them. The petitioners in that proceeding are the original trustees. The respondents are Sheldon Scovill and the Orangeburg National Bank.

At the time of the institution of this proceeding several of the children of Sheldon Scovill were minors. None of them were before the Court.

In that proceeding, under date of August 2, 1924, the Orangeburg National Bank was appointed substituted trustee, and a provision was made for the taking of an accounting of the original trustees and for their discharge. Such accounting was made in due course; the original trustees were discharged; and the trust assets were delivered to the Orangeburg National Bank.

Subsequently the Orangeburg National Bank suspended business because of insolvency. Its Receiver delivered the assets of the trust estate to another Orangeburg bank, the Edisto National Bank.

On April 11, 1927, upon the *ex parte* application of the Edisto National Bank, the Court of Common Pleas for Orangeburg County approved the delivery of the assets of the trust estate to it, and appointed it as substituted trustee in the place of Orangeburg National Bank.

The Ediso National Bank continued to administer the trust until January, 1934, when it was placed in the hands of a Receiver.

In May, 1929, an action was instituted in the Court of Common Pleas for Orangeburg County by Sheldon Scovill and Elizabeth Scovill, his wife, against the children of those parties and the Edisto National Bank, as trustee, for the purpose of obtaining the authority of the Court to expend not exceeding Two Thousand ($2,000.00) Dollars for repairs on certain property, and to deal with certain stock dividends that had been received by the trustee. In the complaint in that proceeding the order of August 2, 1924, substituting the Orangeburg National Bank as trustee, and the discharge of the original trustees "upon proper accounting" was alleged; the complaint also sets out the substitution in 1927 of the Edisto National Bank for the Orangeburg National Bank as trustee, and the fact that the Edisto National Bank was then discharging the duties of trustee.

At the time of the institution of the last-mentioned action all but two of the children of Sheldon Scovill, the defendants therein, were of age. The minors were nineteen years

old and sixteen years old, respectively, and resided with their parents. They were represented in the cause by a guardian *ad litem* duly appointed, who answered, submitting the interests of said minors to the protection of the Court.

In the transcript of the reference held in that cause the following statement appears:

"It is admitted that under proper proceeding in Court of Common Pleas, for Orangeburg County by order of Court of date August 2nd, 1924, Orangeburg National Bank of Orangeburg was substituted as Trustee for Edward N. Scovill and Emily O. Wannamaker who were trustees named in the last Will and Testament of W. N. Scovill deceased. This proceeding appears of record in office of Clerk of Court for Orangeburg County."

In the Master's report filed in that cause it is set forth that "by proper proceedings" the Orangeburg National Bank was substituted as trustee for the original trustees named in the will and that thereafter the Edisto National Bank, by Court order, was substituted as trustee, and authorized the trust estate from the Orangeburg National Bank. "Since that time the Edisto National Bank has been in charge of and has been handling and administering the said trusts."

The Master further sets forth "that the income and earnings therefrom have been paid to the said Sheldon Scovill regularly, for his support, and for the support, maintenance and education of his children." The Court then goes on to deal with the merits of the requests of Edisto National Bank, as trustee, for authority to do the things above referred to.

This report was in all respects confirmed and made the judgment of the Court by an order of Honorable M. M. Mann, presiding Judge, dated June 5, 1929.

There was no appeal from any of the aforementioned orders or proceedings.

A Receiver was appointed for the Edisto National Bank in 1935. In a proceeding brought by him in the United States District Court for the Eastern District of South Carolina in 1936, against the widow and all of the children of Shel-

don Scovill, and against the Receiver of the Orangeburg National Bank, he sought and obtained a decree authorizing him to turn over the trust estate to the persons entitled thereto. At this time all of the children of Sheldon Scovill were adults. They were duly served, and answered by counsel. In their answer they accepted the accounting filed by the plaintiff (as a basis of settlement of the said trust estate) and expressed their willingness "to release the Receiver of the Edisto National Bank from any further liability connected therewith." They also stated that they "are willing for the Court to examine and approve the said final account"; they however denied the right of the plaintiff to recover from the trust estate a certain stockholders' liability asserted in this proceeding, the facts as to which are not material in the present controversy.

By an order dated November 6, 1936, from which no appeal was taken, the last-mentioned Court found and held that the Orangeburg National Bank "was duly appointed by an order of the Court of Common Pleas for Orangeburg County, South Carolina, as successor trustee"; that thereafter the Edisto National Bank "was duly appointed by a proper order of the Court of Common Pleas for Orangeburg, South Carolina, as successor trustee to the Orangeburg National Bank" and that the last-named bank received the trust estate and administered the same until the bank closed. The Court approved the accounting made by the Receiver, and discharged him from further liability or accounting in the premises.

The above brings us down to the matter now before the Court.

Under date of September 19, 1938 (Sheldon Scovill having died), the widow and children of Sheldon Scovill, who were not parties to the original action in 1924 for the substitution of Orangeburg National Bank as trustee, obtained a rule in that cause requiring the original trustees and the Receivers of the two Orangeburg banks to show cause why the petitioners should not be made parties defendant to the

original action. Upon hearing the return to this rule, the same was discharged, and the relief denied.

Under date of October 5, 1938, the same parties, in the same cause, issued their notice to the same respondents, that they would move on a date fixed before the presiding Judge of the Court of Common Pleas at Orangeburg County, for an order declaring the decree of August 2, 1924 (substituting Orangeburg National Bank as trustee) void on the ground that the Court was without jurisdiction to make the said order, and on the further ground that the movants are indispensable parties to a complete determination of the controversy involved in the action.

The returns to this notice relied, among other things, upon the alleged finality and validity of the order of August 2, 1924, and upon the orders made in the proceeding in the United States District Court heretofore related. They also relied upon the doctrines of estoppel and *res judicata*. The motion was refused.

Thereupon this appeal was prosecuted. In broad outline, the contentions of the appellants are:

(1) The present proceeding is not a collateral attack on the decree of August 2, 1924, but is a direct attack thereon.

(2) That the decree of August 2, 1924, was beyond the jurisdiction of the Court, and that the action in which the said decree was granted is still pending.

(3) That the appellants are necessary parties to a complete determination of the issues in the original cause, and are entitled to have an accounting "before a Court of competent jurisdiction."

It would be remarkable, and a discredit to our system of jurisprudence, if on such a state of facts, at this late day, the appellants could be entitled to the relief which they seek. While that relief is described as an attempt to bring to a conclusion a proceeding instituted (and on its face conclude) during the year 1924, it is in fact an attempt to upset three successive decrees of Courts of general jurisdiction granted, respectively, in 1924, 1927, and 1936, all of the present ap-

pellants having been parties to the two later suits in which such decrees were granted.

We do not find it necessary to deal with the various questions discussed in the briefs of counsel. It should suffice to say that in the proceeding in the Court of Common Pleas of Orangeburg County in 1929, the earlier proceedings were fully recited. The present appellants were parties to that cause and were and are bound by the decree made therein, so that any defect in the original proceedings arising out of the fact that the present appellants were not parties thereto has been fully cured.

After having had full opportunity in the 1929 proceeding to assert all of their rights and claims, and having in that proceeding solemnly adopted and approved the proceedings theretofore had, parties to that cause may not now, after a lapse of fifteen years since the decree of which complaint is made was granted, assert that the proceedings in the original cause were irregular, or void for want of jurisdiction.

It is nowhere alleged that any fraud was practiced upon the Court or upon the litigants in the 1927 proceeding, and even as to the original proceeding in 1924, whatever its status might be if it had not been subsequently ratified and adopted by the present appellants, no specifications of fraud are made from which it could be inferred that that decree would not have been granted if the present appellants had been parties to that proceeding.

As heretofore related, the parties to the 1924 proceeding were the original trustees as petitioners, and Sheldon Scovill and the Orangeburg National Bank as respondents. Sheldon Scovill was at that time the principal living beneficiary of the trust. He was the husband and father of the remaining beneficiaries of the trust. His concern with the propperiety of the proposed substitution of trustee, and with the accounting made in that cause by the original trustees,

was greater than that of anybody else. His concurrence in the action of the Court which resulted in the granting of the decree in question, and his approval of the accounting of the original trustees in the Probate Court that followed, are in themselves sufficient to negative any suggestion of impropriety or prejudice in connection with anything that was done in that cause. Certainly at that time, or in all events in 1927 when all of the interested parties were before the Court, it was known more surely than in 1938 whether the trust had been honestly and effectively administered and whether the action of the original trustees and of the Orangeburg National Bank as substituted trustee measured up to the legal and moral obligations of those fiduciaries.

Since the granting of the decrees in 1924 and 1927, one of the original trustees has died, as has Sheldon Scovill.

On elementary legal principles we are satisfied that the appellants are estopped to maintain the present proceeding.

While not necessary to the decision of this case, it is not out of place to deal briefly with the question of the validity of the decree of August 2, 1924, independently of the proceedings that follow.

Trust estates, especially where infants are involved, are peculiarly the direct concern of Courts of equity that administer the same. While always it is best in such cases that all interested parties be brought before the Court whenever the interest of the beneficiaries may be materially affected by any intended action of the trustee or of the Court, a Court of equity is not without power, upon the application of any interested party, to make such administrative orders as may be appropriate in the course of the administration of the estate, without the necessity of bringing before the Court *all* of the beneficiaries of the trust. We are making no adjudication thereabout, but call attention to the provisions of Section 9046 of the Code and to the discussion of the subject by this Court in *Sullivan v. Latimer,* 35 S. C., 422, 14 S. E., 933; *Ex Parte Knust,* Bail. Eq., 489. See

also 65 C. J., 599, 26 R. C. L., 1278; *Haggin v. Straus,* 148 Ky., 140, 50 L. R. A. (N. S.), 642, 651.

In other classes of proceedings, too, there is nothing unusual in the holding that, on the doctrine of estoppel, persons not parties to a decree may nevertheless become bound thereby. *Scheper v. Scheper,* 125 S. C., 89, 105, 118 S. E., 178; *Walker v. Hannon,* 3 S. E. (2d S. C.), 243.

It is to be borne in mind that we are not here dealing with the question whether the accounting of the original trustees or any of the subsequent transactions of the substituted trustees may be impeached on any ground. If there is liability for maladministration or on other grounds, actions against responsible persons may conceivably be maintainable on states of fact that are not pertinent in the present proceeding, and that are not disclosed by the record. We are concerned in this case solely with the question whether the 1924 proceedings can be considered open, and whether the order made in that case, which purports to be a final order, can be impeached, and its consequences evaded, by the methods invoked here, under the circumstances disclosed by the present record.

The orders from which this appeal is taken, are affirmed.

Mr. Chief Justice Stabler, Messrs. Justices Bonham and Fishburne and Mr. Acting Associate Justice Wm. H. Grimball concur.

Mr. Justice Carter did not participate on account of illness.